# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THREE RIVERS ALUMINUM CO., ) <br> ) <br>     Plaintiff, ) <br> ) <br>     v. ) <br> ) <br> J&D ERECTORS, INC., EMPLOYERS ) <br> MUTUAL CASUALTY COMPANY, ) <br> SHERMAN PLAZA VENTURE LLC, ) <br> SHERMAN PLAZA PARTNERS LLC, ) <br> FOCUS CONSTRUCTION, INC., ) <br> ) <br>     Defendants. ) <br> _____) <br> J&D ERECTORS, INC., ) <br> ) <br>     Counter-Plaintiff, ) <br> ) <br>     v. ) <br> ) <br> THREE RIVERS ALUMINUM CO., ) <br> ) <br>     Counter-Defendant, ) <br> _____) <br> J&D ERECTORS, INC., ) <br> ) <br>     Third Party Plaintiff, ) <br> ) <br>     v. ) <br> ) <br> LIBERTY MUTUAL INSURANCE CO. ) <br> and THREE RIVERS ALUMINUM CO., ) <br> d/b/a/TRACO, ) <br> ) <br>     Third Party Defendants. ) | No. 07 C 2388 <br><br> Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

Three Rivers Aluminum Company ("TRACO") has sued J&D Erectors, Inc. and its insurer, Employers Mutual Casualty Company ("EMC"), for breach of contract and Sherman Plaza Venture LLC, Sherman Plaza Partners LLC, and Focus Construction, Inc. ("Focus") to recover on a

mechanic's lien. J&D, in turn, has asserted breach of contract claims against TRACO and its insurer, Liberty Mutual Insurance Company. The case is before the Court on TRACO and Liberty's motion pursuant to Federal Rule of Civil Procedure ("Rule") 56 for summary judgment on the breach of contract claims, counterclaims and defenses J&D asserts against them. For the reasons set forth below, the Court denies the motion.

## **Facts**[1]

TRACO is a Pennsylvania company that manufactures windows and doors. (Defs./Counter-Pl./Third Party Pl.'s (hereafter, "Defs.") LR 56.1(b)(3)(B) ¶¶ 1, 7.) J&D is an Illinois subcontractor that installs windows and accessories. (*Id.* ¶ 2.) Focus is an Illinois general contractor. (*Id.* ¶ 3.) Sherman Plaza Partners is an Illinois development company that is owned, ultimately, by Sherman Plaza Venture. (*Id.* ¶ 4; Third Am. Compl. ¶ 6.) EMC and Liberty are surety companies. (Defs.' LR 56.1(b)(3)(B) Stmt. ¶¶ 5-6.)

On November 8, 2004, Sherman Plaza Partners hired Focus to act as the general contractor for the construction of a twenty-six-story building in Evanston called "the Residences of Sherman Plaza." (*Id.* ¶ 9.)

On January 14, 2005, Dewey Koehler, acting on behalf of Midstate Spring Tite, another window subcontractor that is not a party to this suit, sent TRACO a request for quotation ("RFQ") to supply certain windows and doors for the Sherman Plaza project. (*Id.* ¶ 12.) The request referenced opening marks – the marks on architectural drawings that indicate where windows and doors will be installed – for the portions of the project on floors 3-22. (*Id.* ¶¶ 13-14.) It did not, however, reference

---

[1]Unless noted otherwise, the following facts are undisputed.

marks for the penthouse portion on floors 23-26.  (*Id.*; TRACO & Liberty's Resp. Defs.' LR 56.1(b)(3)(C) Stmt. ¶ 6.)

On January 21, 2005, Focus sent a memo to all window bidders entitled "Bid Addendum #1 – Penthouse Wide Mullion Detail," which says:  "Attached is a series of sketches describing a wide mull detail required to accommodate GFI outlets and silcocks at the penthouse terraces as indicated.  Please verify that your bid includes this detail." (Defs.' App. Opp'n TRACO & Liberty's Mot. Partial Summ. J., Ex. 2, Koehler Decl., Ex. B, Memo from Lake to All Window Bidders of 1/21/05.) TRACO's Jim Price admits that he received the bid addendum and sent a copy of it to J&D.  (R. Supp. TRACO & Liberty's Mot. Partial Summ. J., Ex. 9, Price Dep. at 85-87.)

On January 25, 2005, TRACO mailed quotation number 55629 to Koehler, which says, in relevant part:

> We propose to furnish material as listed on the attached breakdown for a total cost of $1,540,261.  This Quotation is based on your quote request dated 1/14/05.
>
> We have provided, per your quote request, a summary of items with dimensions and associated options included.  Please check the information on each page to ensure that we have met your requirements.
>  . . . .
>
> Please have the company officer read, sign and return the TRACO Commercial Contract to begin order processing.  Notification of acceptance and preliminary scheduling information will follow once the contract is approved.

(*Id.*, Ex. 11, Quotation 55629.)  Attached to the quote were more than one hundred pages of descriptions of the materials TRACO proposed to supply.  (*Id.*, Ex. 12, Quotation Detail.)  Though J&D says it did not realize it at the time, TRACO's quote did not include materials for the penthouse floors. (Defs.' LR 56.1(b)(3)(B) Stmt. ¶¶ 18, 68.)  The quotation says it is "[v]alid until . . . 3/22/05." (R. Supp. TRACO & Liberty's Mot. Partial Summ. J, Ex. 11, Quotation 55629.)

3

At some point in January 2005, Koehler started working for J&D as well as Midstate and decided that J&D should bid on the Sherman Plaza project. (TRACO & Liberty's Resp. Defs.' LR 56.1(b)(3)(C) Stmt ¶¶ 8, 11.)

On February 21, 2005, Koehler sent a bid to Focus on behalf of J&D to supply the windows, doors and accessories for the project for a total of $4,100,000.00. (*Id.* ¶ 12; R. Supp. TRACO & Liberty's Mot. Partial Summ. J., Ex. 17, J&D Proposal of 2/21/05.) The bid specifically excludes only skylights and skylight glass, exterior and interior trim, fire-rated steel, hollow metal frames, architectural metals, terrace doors and materials needed for the retail portion of the project. (R. Supp. TRACO & Liberty's Mot. Partial Summ. J., Ex. 17, J&D Proposal of 2/21/05.)

On either February 23, or 25, 2005, the date is disputed, Wade Giorno of Focus, Phil Saineghi of J&D and Price of TRACO met to discuss the project. (Defs.' LR 56.1(b)(3)(C) Stmt. ¶ 14; TRACO & Liberty's Resp. Defs.' LR 56.1(b)(3)(C) Stmt. ¶ 14.) The penthouse windows were among the items discussed at that meeting. (TRACO & Liberty's Resp. Defs.' LR 56.1(b)(3)(C) Stmt. ¶ 16.) During the meeting, Price did not confirm or deny that TRACO would supply the penthouse windows. (*Id.* ¶ 19; Supplemental App. Supp. TRACO & Liberty's Mot. Partial Summ. J., Ex. 10, Giorno Dep. at 105-06.)

On March 1, 2005, Koehler submitted to Focus a revised proposal from J&D to provide: "Approximately 90,000 square feet of TRACO fixed, Project In and Sliding Glass Doors, Receptors and Subsills with Screens, Tower Clear Anodized, Loft Kynar 'Jasper' Glazing. U.S. Aluminum Storefront and Entrances, Column Covers and Canopy Glazing," for the total sum of $4,410,000.00. (R. Supp. TRACO & Liberty's Mot. Partial Summ. J., Ex. 18, J&D Revised Bid of 3/1/05.) The revised bid specifically excludes only materials for the retail portion of the project, skylights and

4

skylight glass, exterior and interior trim, fire-rated steel, architectural metals, hollow metal frames and terrace doors. (*Id.*)

On March 11, 2005, Giorno sent Koehler a memo saying:

I am pleased to award the Window, Slider, Storefront and Curtain wall subcontracts for 'The Residences of Sherman Plaza' Condominium and 'Sherman Plaza Retail' projects to J&D Erectors, Inc. for the total combined sum of $4,481,000 all inclusive. Attached are the following:

1. Completed qualification form dated 3/11/05 summarizing the terms of the agreement. Please review and let me know if you have any questions.
2. Exhibit D, Subcontractors [sic] duration schedule. Construction is progressing quickly, and it will be critical to get started on shop drawings immediately.
3. Separate Exhibit F's [sic] for the Condo, and Retail. I will need to break down the contract amounts for billing and allocation purposes.

I look forward to working with J&D Erectors and I am confident that this will be a successful project for both our companies. I will work on our Contract next week.

(*Id.*, Ex. 19, Memo from Giorno to Koehler of 3/11/05.) The schedule Giorno attached to the memo includes dates for installing the penthouse windows. (*Id.*, Ex. D, Schedule at FC0002957.)

Thereafter, J&D and EMC executed a surety bond in which EMC agreed to assume J&D's obligations to its subcontractors if J&D defaulted. (TRACO & Liberty's Resp. Defs.' LR 56.1(b)(3)(C) Stmt. ¶ 27.)

On March 24, 2005, J&D's Saineghi executed a document given to him by TRACO's Price. (R. Supp. TRACO & Liberty's Mot. Partial Summ. J., Ex. 21, TRACO Document of 3/24/05.) At the top of the first page, there are three boxes labeled, respectively, "commercial quotation," "contract," and "order." (*Id.* at 1.) The "contract" box is checked. (*Id.*) The body of the document, however, says "Booking Order Only" and "Final Price To Be Determined With Final Scope." (*Id.*) At the end of the page, it says "Quotation #: 55629" and "Grand Total: $1,540,261." (*Id.*)

5

The second page is entitled "Commercial Contract Terms and Conditions." (*Id.* at 2.) Among other things, it says:

> Upon receipt of a signed Purchase Order, acceptance by the Purchaser of the Terms and Conditions, approval by the TRACO Credit Department and receipt by the Seller of complete manufacturing information, this order shall be scheduled by TRACO and an estimated shipping date will be assigned. It is understood and agreed that this date is an estimated shipping date and that TRACO will endeavor to comply with this date, however, TRACO will not be subject to any charges, penalties, liquidated damages or liability whatsoever for failure to comply with said date.

(*Id.*)

The March 24 document also says that the "contract shall be governed by the laws of the Commonwealth of Pennsylvania and shall not be considered binding until approved by an officer of the Seller." (*Id.* at 2.) At the end of the page, there is a section entitled "Approval," which says: "[t]he foregoing quotation is hereby approved [by] TRACO" with a line for a TRACO officer's signature. (*Id.*) That line is blank. (*Id.*)

The March 24 document does not describe the type, sizes or quantities of materials to be supplied by TRACO. (*Id.*; Defs.' LR 56.1(b)(3)(B) Stmt. ¶ 43.) It also does not refer to the project specifications or architectural drawings or include a delivery or installation schedule. (Defs.' LR 56.1(b)(3)(B) Stmt. ¶¶ 45, 49.)

According to Koehler, he and Brad Bartley, who was then an Inside Sales Manager for TRACO, had multiple conversations before J&D signed the March 24 document in which Bartley agreed that TRACO would supply all of the windows for the project for $1,540.261.00, and would adhere to Focus' construction schedule. (Defs.' App. Opp'n TRACO & Liberty's Mot. Partial Summ.

6

J., Ex. 2, Koehler Decl. ¶¶ 25-28.) Bartley denies that he made any such statements. (Supplemental App. Supp. TRACO & Liberty's Mot. Partial Summ. J., Ex. 8, Bartley Aff. ¶¶ 5-8.)[2]

After the March 24 document was signed, TRACO and Liberty executed a supply bond in favor of J&D. (Defs.' LR 56.1(b)(3)(B) Stmt. ¶ 51.)

On April 5, 2005, TRACO sent J&D an acknowledgment of its purchase order. (*Id.* ¶ 52.) Among other things, the acknowledgment says that "TRACO has scheduled your release for production on 5-16-05 with a lead-time of 12 to 14 weeks (early to mid August) for the scope of this project." (R. Supp. TRACO & Liberty's Mot. Partial Summ. J., Ex. 23, TRACO Order Acknowledgment of 4/5/05.) It also says that TRACO could meet the estimated lead-time only if the manufacturing information provided by J&D was "accurate and complete." (*Id.*) The acknowledgment concluded with the following: "It is imperative that all information be as accurate and compete as possible. Any missing or incomplete information could result in a delay in processing your order, which could result in a change to your shipping date." (*Id.*)

One of the things TRACO needed to manufacture the windows for the Sherman Plaza project was shop drawings. (Defs.' LR 56.1(b)(3)(B) Stmt. ¶ 54.) TRACO received the first shop drawings from J&D on August 31, 2005. (*Id.* ¶¶ 55-57.) None of the drawings TRACO received from J&D between August 31, 2005 and April 16, 2006 pertained to the penthouse floors. (*Id.* ¶ 60.)

TRACO received the first shop drawings for the penthouse floors on April 17, 2006. (*Id.* ¶ 61.) Those drawings referenced a "W" opening mark that did not appear in the quotation or any of the other shop drawings. (*Id.* ¶ 62.) The "W" windows were of a different size and configuration than anything described in the quotation or the other shop drawings. (*Id.* ¶ 63.) Before receiving those

---

[2]It is not clear whether the parties deposed Koehler or Bartley. If they did, however, they did not submit the deposition transcripts to the Court.

drawings, TRACO sent J&D multiple project schedules that included TRACO's delivery of the penthouse floor windows. (TRACO & Liberty's Resp. Defs.' LR 56.1(b)(3)(C) Stmt. ¶ 38.)

On June 14, 2006, TRACO told J&D that the windows for the penthouse floors were not included in its quotation and J&D would have to sign a change order to add them. (Defs.' LR 56.1(b)(3)(B) Stmt. ¶ 64.) The next day, TRACO sent J&D a quote offering to provide windows for the penthouse floors for $595,764.00. (*Id.* ¶ 65; R. Supp. TRACO & Liberty's Mot. Partial Summ. J., Ex. 29, Quotation DSB-84034 of 6/15/06.)

J&D rejected the quote, contending that TRACO had previously agreed to provide all of the materials necessary for the Sherman Plaza project for $1,540,261.00. (Defs.' LR 56.1(b)(3)(B) Stmt. ¶ 66.) Moreover, J&D withheld more than $800,000.00 of TRACO's contract balance and used it to purchase materials for the penthouse floors from another supplier. (*Id.* ¶ 67.)

TRACO and Liberty contend that defendants breached their contracts by failing to pay TRACO all of the sums it is due for the Sherman Plaza project. J&D contends that TRACO breached its contract by failing to supply all of the materials for the project for the amount set forth in quotation 55629 and in accordance with Focus's construction schedule and Liberty breached its obligation to honor the supply bond it executed in J&D's favor.

## Discussion

To prevail on a summary judgment motion, "the pleadings, the discovery and disclosure materials on file, and any affidavits [must] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the

non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

TRACO and Liberty contend that they are entitled to judgment as a matter of law on any breach of contract claim, counterclaim or defense defendants assert for TRACO's failure to provide materials for the penthouse floors or adhere to Focus' schedule. In TRACO and Liberty's view, neither of those terms is in the parties' contract which, they say, consists solely of quotation 55629 and the March 24 document. Because it is undisputed that the quotation neither includes the penthouse windows nor sets a delivery schedule, and the March 24 document references the quotation, TRACO & Liberty say those terms could not have been part of the contract. (*See* Defs.' LR 56.1(b)(3)(B) Stmt. ¶¶ 18, 68; R. Supp. TRACO & Liberty's Mot. Partial Summ. J., Ex. 21, TRACO Document of 3/24/05.)

Defendants, of course, disagree. They contend that the contract does not consist solely of the March 24 document and the quote because: (1) Koehler submitted the quote to J&D for Midstate, not TRACO; (2) the quote expired on March 22, 2005 and, though referred to in the March 24 document, is not incorporated in it; (4) the March 24 document could not have been the parties' final agreement, as it states "Booking Order Only" and "Final Price To Be Determined With Final Scope"; and (5) the evidence shows that the parties' orally agreed, before the March 24 document was signed, that TRACO would provide all of the windows for the project for $1,540,621.00 and would adhere to Focus' schedule.

The only thing the record establishes is that there are material fact issues as to the terms of the parties' agreement. There is no dispute that the March 24 document has the "contract" box checked, has a page entitled "Commercial Contract Terms and Conditions" and refers to quote 55629. (*Id.*)

9

It is also undisputed, however, that the same document says "Booking Order Only," "Final Price To Be Determined With Final Scope," and the approval section is not signed by an officer of TRACO, which it says is necessary for the document to "be considered binding." (*Id.*) Moreover, there is no dispute that the quote referred to in the March 24 document was prepared by TRACO in response to Koehler's RFQ on behalf of Midstate, not J&D, and does not include either a delivery schedule or materials for the penthouse floors. (TRACO & Liberty's Resp. Defs.' LR 56.1(b)(3)(C) Stmt. ¶¶ 5-6, 10; Defs.' LR 56.1(b)(3)(B) Stmt. ¶¶ 18, 68; R. Supp. TRACO & Liberty's Mot. Partial Summ. J., Ex. 11, Quotation 55629.) Further, though he denies doing so, defendants contend that before the March 24 document was signed, TRACO's Bartley orally agreed that TRACO would provide all of the windows for the project for $1,540,621.00 and would comply with Focus' schedule. (Defs.' App. Opp'n TRACO & Liberty's Mot. Partial Summ. J., Ex. 2, Koehler Decl. ¶¶ 24-28.)[3]

TRACO and Liberty urge the Court to disregard Koehler's declaration because it is (1) "blatantly contradicted by the record"; and (2) violates the parol evidence rule. (Reply Br. Supp. TRACO & Liberty's Mot. Partial Summ. J. at 3,10 (citing *Scott v. Harris*, __ U.S.__, 127 S. Ct. 1769, 1776 (2007) (stating that lower courts should have disregarded section 1983 plaintiff's version of events because it was contradicted by a videotape of those events)). In fact, though Koehler's statement is not corroborated by other evidence, it is *contradicted* only by Bartley, the TRACO employee who allegedly made the agreement. (Supplemental App. Supp. TRACO & Liberty's Mot. Partial Summ. J., Ex. 8, Bartley Aff. ¶¶ 5-8; *id.*, Ex. 7, Dep. of J&D & Saineghi at 102 (answering "no" when asked if he was aware of "[a]nything *in writing* [that] chang[ed] the scope" of quotation

---

[3]As non-movants, the Court must accept defendants' version of events as true. *Michas*, 209 F.3d at 692.

10

55629 (emphasis added)).)  Because the record does not establish that "no reasonable jury could believe" defendants' version of events, *Scott*, 127 S. Ct. at 1776, the Court cannot disregard it.

TRACO and Liberty fare no better with the parole evidence rule.  Under Pennsylvania's version of the uniform commercial code ("UCC"), which the parties agree governs this case, parol evidence may not be used to contradict "[t]erms with respect to which the confirmatory memoranda of the parties agree or . . . are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms." 13 Pa. Cons. Stat. § 2202.  Thus, Koehler's testimony about his alleged oral agreement with Bartley is inadmissible only if the record indisputably establishes that:  (1) quotation 55629 and the March 24 document agree that adhering to Focus' construction schedule was a term of the parties' contract and supplying the penthouse windows was not; or (2) those documents constitute the parties' final expression of their agreement.

The record conclusively establishes neither proposition.  As noted above, there is no dispute that the March 24 document does not describe the type, sizes or quantities of materials to be supplied by TRACO or set forth a delivery schedule.  (Defs.' LR 56.1(b)(3)(B) Stmt. ¶¶ 43, 45, 49.)  Rather, TRACO and Liberty say the quantity term and the lack of agreement to a schedule are established by the quotation, which is incorporated into the March 24 document.

The record does not, however, definitively establish that the parties intended to incorporate the quote into that document.  There is no dispute that the quote was prepared by TRACO for Midstate, not J&D, and says it is "[v]alid until . . . 3/22/05," two days before the March 24 document was signed. (TRACO & Liberty's Resp. Defs.' LR 56.1(b)(3)(C) Stmt. ¶ 10; R. Supp. TRACO & Liberty's Mot. Partial Summ. J., Ex. 11, Quotation 55629.)  There is also no dispute that TRACO submitted quotation 55629 to J&D after receiving the bid addendum regarding the penthouse windows.  (*See* Defs.' App. Opp'n TRACO & Liberty's Mot. Partial Summ. J., Ex. 2, Koehler Decl.,

11

Ex. B, Memo from Lake to All Window Bidders of 1/21/05; R. Supp. TRACO & Liberty's Mot. Partial Summ. J., Ex. 9, Price Dep. at 85-87 (admitting that he received the 1/21/05 bid addendum); *id.*, Ex. 11, Quotation 55629 (dated 1/25/05).) Nor is it contested that J&D submitted a revised bid to Focus after receiving quotation 55629 from TRACO, which said the only materials excluded from the bid were those for the retail portion of the project, skylights and skylight glass, exterior and interior trim, fire-rated steel, architectural metals, hollow metal frames and terrace doors. (R. Supp. TRACO & Liberty's Mot. Partial Summ. J., Ex. 18, Revised Bid of 3/1/05.) Given these uncontested facts, the Court cannot say that quotation 55629 and the March 24 document indisputably agree that TRACO would not supply the penthouse windows or comply with Focus' construction schedule.

The record also does not incontestably establish that the quotation and March 24 document constitute the parties' final expression of their agreement. There is no dispute that the March 24 document, which was signed nearly two months after TRACO submitted quotation 55629, says "Booking Order Only" and "Final Price To Be Determined With Final Scope," phrases that do not suggest finality. (*Id.*, Ex. 21, TRACO Document of 3/24/05.) It is also undisputed that the March 24 document says it "shall not be considered binding until approved by an officer" of TRACO, but the line under "quotation is hereby approved [by] TRACO" is blank. (*Id.*) Given these undisputed facts, the Court cannot say, as a matter of law, that the quotation and March 24 document constitute the parties' final expression of their agreement.

Because the record does not conclusively establish either that quotation 55629 and the March 24 document agree that adhering to Focus' construction schedule was a term of the parties' contract and supplying the penthouse windows was not, or that those documents constitute the parties' final expression of their agreement, the Court is not barred from considering Koehler's testimony in connection with this motion.

TRACO and Liberty also argue that any alleged oral agreement to provide the penthouse windows is unenforceable under the UCC's statute of frauds, which provides:

> Except as otherwise provided in this section[,] a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

13 Pa. Cons. St. § 2201(a). Viewed favorably to defendants, as it must be on this motion, the record supports the inference that the March 24 document satisfies the statute of frauds.

There is no dispute that: (1) TRACO submitted quotation 55629 to Koehler on January 25, 2005, after having received the bid addendum regarding a detail of the penthouse windows; (2) on March 1, 2005, J&D submitted a revised bid to Focus, to provide, among other things, "[a]pproximately 90,000 square feet of TRACO [windows]," excluding only skylights and skylight glass, exterior and interior trim, fire-rated steel, architectural metals, hollow metal doors, terrace doors and materials for the retail portion of the project; (3) Focus accepted J&D's revised bid on March 11, 2005, in a memo saying: "I am pleased to award the Window . . . subcontracts . . . to J&D Erectors, Inc. for the total combined sum of $4,481,000 all inclusive," and attached a schedule setting dates for installing the penthouse windows; and (4) on March 24, 2005, J&D's Saineghi signed a document given to him by TRACO that is styled a "contract" and refers to quotation 55629. (R. Supp. TRACO & Liberty's Mot. Partial Summ. Ex. 9, Price Dep. at 85-87; *id.*, Ex. 11, Quotation 55629; *id.*, Ex. 18, J&D Revised Proposal of 3/1/05; *id.*, Ex. 19, Ex. 19, Memo from Giorno to Koehler of 3/11/05; *id.*, Ex. 21, TRACO Document of 3/24/05.) Moreover, J&D contends that Koehler and Bartley agreed, sometime between February 25 and March 23, 2005, that TRACO would supply all of the windows, including those for the penthouse, for the project. (Defs.' App. Opp'n TRACO & Liberty's Mot. Partial Summ. J., Ex. 2, Koehler Decl. ¶¶ 25-26.) Viewed in defendants' favor, as they must be, some

13

of the reasonable inferences those facts support are that TRACO and J&D agreed, after TRACO issued quotation 55629 and before J&D signed the March 24 document, that TRACO would supply, among others, the penthouse windows for the amount set forth in the quotation, and the March 24 document memorializes that agreement. If those inferences prove to be true, the March 24 document will satisfy the statute of frauds.

Finally, TRACO and Liberty contend that they are entitled to judgment because the record contains no evidence to suggest that Bartley had authority to enter into an agreement on TRACO's behalf. Once again, the Court disagrees. Bartley testified that he was TRACO's Inside Sales Manager for the Midwest from January-March 2005 and, as such, he "was generally responsible for managing TRACO's responses to [RFQs]" for that area. (Supplemental App. Supp. TRACO & Liberty's Mot. Partial Summ. J., Ex. 8, Bartley Aff. ¶¶ 2-3.) His job title and duties, together with his allegedly extensive interactions with Koehler with respect to the Sherman Plaza project, support the inference that Bartley had apparent authority to bind TRACO to agreements with respect to RFQs. *Atkinson v. Haug*, 622 A.2d 983, 986 (Pa. Super. 1993) ("Apparent authority will be found where the principal, by words or conduct, leads people with whom the alleged agent deals to believe the principal has granted the agent the authority he purports to exercise.").

In short, the record discloses that there are genuine issues of material fact as to whether the parties agreed that TRACO would supply materials for the penthouse floors and adhere to Focus' construction schedule. Thus, TRACO and Liberty are not entitled to summary judgment on defendants' claims, counterclaims or defenses that TRACO's failure to do so, and Liberty's subsequent failure to honor the supply bond, breached their contracts with defendants.

## Conclusion

For the reasons stated above, TRACO and Liberty's motion for partial summary judgment [doc. no. 84] is denied. At the next status hearing, the parties should be prepared to set a trial date.

**SO ORDERED.**  ENTERED: September 10, 2008

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**